# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6272 | **DATE** | 8/25/2010 |
| **CASE TITLE** | Bresnahan vs. Intuitive Surgical Inc., et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to compel [36] is granted as it relates to the notes and other materials of ISI's Vice President of Human Resources, Heather Rider, stemming from her investigation of Plaintiff's sexual harassment complaint.

■[ For further details see text below.]  Notices mailed by Judicial staff.

# STATEMENT

## BACKGROUND

Presently before the Court is Plaintiff Bresnahan's Motion to Compel [36] as it relates to certain notes and other materials of ISI's Vice President of Human Resources, Heather Rider, stemming from her investigation of Plaintiff's sexual harassment complaint. One of those documents was withheld on the basis of attorney-client privilege and the Court already has denied the motion as it pertained to that document.[1] The remaining twelve documents were withheld on the basis of attorney work product. On June 17, 2010, the Court required Defendants to provide a privilege log for these documents and then allowed supplemental briefing and argument on the privilege issue. In addition, the Court reviewed the documents *in camera.* For the reasons set forth below, the Court now finds that the documents are not protected by the attorney work product doctrine. Therefore, the motion to compel these documents is granted, and Defendants are to produce them within three days of the entry of this order.

## DISCUSSION

The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3). Under that rule, materials prepared in anticipation of litigation are subject to a qualified protection from discovery. Fed. R. Civ. P. 26(b)(3). The doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). "The work-product doctrine extends to those who are enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation." *Kayata v. Foote, Cone & Belding Worldwide, L.L.C.*, No. 99 Civ. 9022 VM KNF, 2000 WL 502859 (S.D.N.Y. April 26, 2000) (citing

*United States v. Nobles,* 422 U.S. 225, 238 (1975)).

In deciding whether a document was prepared in anticipation of litigation, this court must look to whether "in light of the factual context the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996) (quoting *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983)). "[T]here is a 'causation' element insofar as production of the materials must be caused by the anticipation of litigation." *Coltec Indus., Inc. v. American Motorists Ins. Co.*, 197 F.R.D. 368, 371 (N.D. Ill. 2000). "If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine," even if litigation is imminent. *Id.* The party asserting the work product doctrine has the burden of establishing that the documents are entitled to work product protection. *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991); *Binks,* 709 F.2d at 1118-19.

Based on the facts presented, the Court finds that Defendants have failed to meet their burden of demonstrating that the documents in question are entitled to protection under Rule 26(b)(3). The documents were created by Ms. Rider from Human Resources in September 2008 during an investigation that she conducted shortly after Plaintiff made an internal complaint of sexual harassment. At the time, ISI had a written policy that required Human Resources to promptly conduct such an investigation in this situation. The policy stated: "All incidents of harassment that are reported will be investigated. Human Resources will immediately undertake or direct an effective, thorough and objective investigation of the harassment allegations." Ms. Rider investigated the complaint by (among other things) conducting interviews of certain employees. The documents that Defendants have withheld include Ms. Rider's interview notes as well as her notes concerning steps for the investigation and emails with her impressions and conclusions based on the investigation.

Defendants' privilege log indicates that Ms. Rider's notes and other documents constitute work product because the investigation was "conducted at the direction and with the advice of counsel." In order to test this assertion and determine whether Ms. Rider conducted the investigation in anticipation of litigation (not simply in the ordinary course of business), the Court allowed Defendants an opportunity to submit affidavits and other evidence for consideration. In response, Defendants provided an affidavit from Ms. Rider. That affidavit, however, does not state that Ms. Rider conducted the investigation in anticipation of litigation, or that she ever spoke or thought about the prospect of litigation. Nor does it say that Ms. Rider spoke with counsel prior to undertaking the investigation, either about the need to investigate because of the potential for litigation or about how to conduct the investigation so that it would meet the needs of counsel.[2] Instead it states simply that "I became aware of an internal complaint by then ISI employee, Mary Bresnahan. Thereafter, I conducted an investigation of Ms. Bresnahan's complaint." (Rider Aff. ¶ 2.). Defendants also have not identified any document generated at or near the time of the investigation indicating that the investigation was done in anticipation of litigation. It is worth noting that Defendants did not institute a litigation hold (to ensure preservation of documents in anticipation of litigation) until almost three months *after* Ms. Rider completed her internal investigation. The litigation hold was prompted by Plaintiff's filing of a claim with the EEOC in November, 2008.

What Ms. Rider's affidavit does state is that at an unknown point "during the investigation," she "received advice and direction from ISI General Counsel, Mark J. Meltzer as well as outside counsel, Darren E. Nadel of Littler Mendelson." (Rider Aff. ¶ 3.) Defendants have not provided any further detail concerning the timing, frequency or purpose of Ms. Rider's communications with counsel. Nor have they supplied an affidavit from either of these attorneys indicating that they discussed the prospect of litigation

| STATEMENT |
|---|

with Ms. Rider and hence the need for an investigation, or that they directed her investigation. It is therefore entirely plausible that Ms. Rider undertook the investigation solely on her own initiative to fulfill her responsibility within Human Resources to comply with the company policy (and not with litigation in mind), and later consulted counsel on some discrete issue that arose.[3] The mere fact that, at some point during her inquiry into the internal complaint, Ms. Rider "received advice and direction" from counsel about some unknown issue, is not enough to demonstrate that Ms. Rider's investigation was done in anticipation of litigation. For example, Ms. Rider may have called counsel merely to ask a question about a company policy implicated by the alleged conduct and Ms. Rider's findings. In addition, her discussions with counsel during the investigation may have lasted only a few minutes. We cannot conclude from the vague statements in Ms. Rider's affidavit about receiving direction and advice from counsel that the investigation documents are protected as attorney work product.

Ms. Rider's affidavit also states that, at some point *after* she completed the investigation, she reported her impressions and conclusions not only to the sales management team (so they could decide whether to discipline anyone or take other corrective measures) but also to counsel so they could assess the "risk of exposure" and "take appropriate steps." (*Id.* at ¶ 5.) Ms. Rider's affidavit does not say when these discussions with counsel took place, but even if the discussions occurred immediately following the investigation rather than a couple of months later (after the EEOC complaint was filed), such after-the-fact discussions, in and of themselves, would not be sufficient to demonstrate that the investigation was conducted in anticipation of litigation under the circumstances presented here.

Our conclusion might well have been different if Ms. Rider had consulted with counsel before undertaking the investigation in order to discuss the potential for litigation and to seek advice and direction from counsel on how to conduct the investigation to ensure its usefulness in the event of a future lawsuit. In *Kayata,* the court held that materials generated by a Human Resources employee during her investigation of allegations in an EEOC complaint of discrimination were protected by the work product doctrine even though the company had a policy requiring Human Resources to conduct such an investigation. 2000 WL 502859, at *1-2. But the court in that case relied upon deposition testimony from the Human Resources employee that she had deviated from normal procedure by contacting legal counsel *before* conducting the investigation and that every action taken in connection with the investigation was at the direction of counsel. *Id.* at *2.

The facts presented in the case at hand are quite different; there is simply not a sufficient basis to conclude that Ms. Rider conducted the investigation because of the prospect of litigation rather than simply in the ordinary course of business. The motion to compel production of the investigation documents is therefore granted.

1. *See* minute order dated July 19, 2010 (Dkt. No.53). That order also denied the motion to compel as it related to the entirety of Chip Bowman's personnel file.

2. The Court specifically inquired as to whether Ms. Rider received any advice or direction from counsel before undertaking the investigation and was told that Ms. Rider was unable to provide additional detail beyond what was in the affidavit concerning when she first communicated with inside counsel regarding Plaintiff's complaint.

3. Of course, to the extent that any documents reflected communications with counsel to secure legal advice, the documents could properly be withheld based on attorney-client privilege.